We'll hear the next case, Zapata v. HSBC. Mr. Elias, you can proceed. Thank you, Your Honor. May it please the court, Richard Elias on behalf of the plaintiffs. Today I'm going to address the trial court's decision to dismiss the case under Rule 12b-6 of the Federal Rules of Civil Procedure. The facts, as we have pledged them in the complaint, are that for over a decade, HSBC laundered, provided billions of dollars of laundering services to the Mexican drug cartels, including the Sinaloa cartel, including the Los Zetas cartel, and including the Juarez cartel. Their conduct was criminal, and their conduct was flagrant, such to the extent that they earned the notoriety of being the financial institution, the place to launder money, coined by drug lords in Mexico. During this time, as they were assisting the cartels in laundering billions of dollars, my clients experienced what can only be described as horrific and senseless acts of violence in Mexico. My clients are American citizens, including two U.S. federal agents who were attacked during the course of their duties, a U.S. consulate worker who was pregnant, who was attacked with her family, a civilian wedding party, as well as a former... The conduct of providing financial support, how is that an act of terrorism? Yes, Your Honor. So, that goes to the heart of one of the reasons that the trial court dismissed the case, and that is, can we establish that HSBC's conduct of laundering billions of dollars amounts to an act of international terrorism as defined under the Anti-Terrorism Act? There are three elements. Number one is, the conduct has to be criminal, a criminal violation that is dangerous to human life, and I'm paraphrasing, Your Honor. Number two, and this was the crux of the trial court's decision, must appear to be intended to intimidate a civilian population or a government, and three, must occur in the United States or transcend international boundaries. The case law is substantial in other circuits, in lower courts, in this circuit, that providing financial support directly to a terrorist organization is an act that is dangerous to human life. And with respect to the intent issue... But the bank wasn't a terrorist organization, was it? The bank is not a terrorist organization, but the bank provided material support to a terrorist organization, several of them, and that's the issue. And under the material support framework, you don't have to be a terrorist organization in order to be liable under the Anti-Terrorism Act. What you have to do is provide material support to a terrorist organization. Have the cartels been listed as terrorist organizations? They have not. Well, they've been nominated several times, but they are not a formal foreign terrorist organization under the United States. But, Your Honor, as we've laid out persuasively in our papers, that is not a requirement for liability under the Anti-Terrorism Act. In fact, under the three provisions that provide for material support, only one of them requires that the organization be a financial terrorist organization. The other one, the two that we're proceeding under, 2339A, requires that you provide material support to an organization or a person who is conducting certain enumerated terrorism crimes, all of which occurred in this case. Including murder of a United States citizen outside the United States, attack of a federal employee in the course of their duties, etc. And the other, 2339C, is a more general statute that outlaws providing financial support. So, there may be cases where someone gives money directly to a terrorist organization. That's not what we have here. We have banks that are providing financial services, allegedly knowing that the money is being laundered. How is that enough to support an ATA claim? That's a great question, Your Honor. And what I would suggest to the court, and I think it's clear from reading our paper, we're not talking about simply a bank providing financial services. Let me just give you one primary example. HSBC admitted in their deferred prosecution agreement, as well as documents emailed in the Senate report, that members of HSBC managers executed a massive money laundering scheme on behalf of the Sinaloa cartel of over $100 million. That's one example of the conduct that we're talking about. They also routinely had individuals who accepted, at the teller windows, hundreds of thousands of dollars of USD cash in Mexico in boxes specifically designed to fit into the teller windows. We're not talking about a bank simply processing transactions. We're talking about a bank that has ignored... Does that conduct, that conduct is indeed alleged, so does that conduct plausibly support an argument that the banks appear to intend to intimidate, control, etc.? Yes, Your Honor. We submit that it does. How so? Explain that. Sure. I think Boeing, in the Seventh Circuit case, as well as the many cases in the lower court in this circuit and elsewhere, have said it best. That when somebody, an entity, lends direct financial support to a terrorist organization, that conduct does objectively appear to be intended to intimidate or coerce a civilian population just like the terrorist group itself is. Help me understand your theory of proximate cause. I'm not quite sure I get it. Well, Your Honor, proximate cause is a very fluid and complicated issue. Simplify it for me. Sure. Let me simplify it in this regard. The three elements that the Second Circuit looks at are directness, substantiality, and foreseeability. In this case, we have evidence that the drug cartels directly supported... I'm sorry, that HSBC directly supported the drug cartels through substantial money laundering. We're not talking about one, two incidences. We're talking about a course of conduct over a decade that directly contributed to the cartels. And, Your Honor, we have also alleged and I think persuaded... I think I understand the background of all this, but how did the conduct that you ascribe to HSBC, how is this the proximate cause of the killings? So, the money laundering is the lifeblood of the cartels. Drug organizations cannot function the way that they do today and have gained the power that they have without money laundering. HSBC is not responsible for the existence of the cartels, but they have played an undue part in ensuring that they have grown and developed the infrastructure that they can along with other wrongdoers over the last decade that allowed them to amount to what they are and carry out their acts of terrorism. And that's what happened in this case. The tie is HSBC provided money laundering support, substantial money laundering support, under circumstances in which it was foreseeable that the cartels would use some of that support, at least in part, to carry out acts of violence. All right, thank you. You have some time for rebuttal. We'll hear from Mr. Pincus. Good morning, Your Honors, and may it please the Court, Andrew Pincus for Defendants at Police, and I'm joined by my partner, Mark Hanshay. Defendants abhor the violent acts described in the complaint, and plaintiff's losses are indeed horrific. But the question here is whether the ATA imposes primary liability on the defendant banks in the circumstances alleged in the complaint. And the complaint focuses, and we've heard today from my friend on the other side, on defendants' lack of controls to prevent money laundering that were detailed in the Deferred Prosecution Agreement and the Senate report. And defendants were subject to very substantial sanctions for that conduct. They paid a total of more than $1.9 billion, they restructured their AML functions, and they had a five-year compliance monitor. But, as Judge Garifuss concluded, those anti-money laundering violations don't establish a violation of the ATA for two independent reasons. First, because the complaint does not plausibly allege proximate cause. As Judge Garifuss said, there simply are no factual allegations permitting a plausible inference of a direct connection between the defendant's processing of the transactions and plaintiff's injuries. As he said, plaintiffs don't allege, and I'm quoting, any relationship between HSBC's money laundering and the acts of violence perpetrated against them. They don't allege that the cartels needed laundered money to carry out violence in Mexico. As he said, plaintiffs acknowledge that the cartels have abundant cash resources, and of course the money laundering was to take money out of Mexico and move it to other places. What about the Seventh Circuit's case, which does seem to find that there's proximate cause in this kind of scenario? Well, I think Your Honor is referring to the Boeing case. That's a case that involved actual additional contributions of money. It didn't involve a bank. It involved entities that contributed money to terrorist organizations. And what the court said there is giving incremental money to terrorist organizations, in the circumstances of that case, created a reasonable inference. Here, the connection between the money laundering and the terrorist activities, or the claimed terrorist activities, is totally lacking, as the district court said. At most, what's alleged here is that the... But the argument is money laundering is the lifeblood of these cartels. The banks know that it's going on. They are intentionally facilitating it. Why isn't that the equivalent of giving money to an organization? Well, it's the exact argument that the Ninth Circuit rejected in the Fields case with respect to Twitter. The allegation there was that Twitter, by providing a communications platform that terrorist organizations used for recruiting and indeed for direct communications among terrorists who were committing attacks, created a proximate link between the provision of that platform and the terrorist acts. And what the Ninth Circuit held in that case is that at most, the support, and I'm quoting, facilitated the organization's growth and ability to plan and execute terrorist acts, but that there was no connection between that support and the terrorist injuries. Here, it's even clearer, because although the plaintiffs do have fulsome allegations about money laundering, they don't say anything about how the money laundering and the moving money out of Mexico had any link to the attacks in Mexico. That's the critical connection that's missing here. Some courts have said money laundering enables these cartels to operate, to buy vehicles, to buy weapons. That's the allegation. I think that is the allegation, Your Honor. That's not plausible. I think what that is is a remote allegation. Obviously, proximate cause is designed to distinguish between things that might be remote causes and things that might be closer causes. And what the court has said, both in Rothstein and Lind, is that there has to be a direct relationship between the defendant's conduct and the injury asserted. It has to be a substantial factor in causing the injury, and that's the connection that we think is missing here, and that really is what the district court found is missing, and is missing in the complaint. It's true that courts have said that incremental resources, giving incremental money to a terrorist organization, could suffice. But here, there isn't incremental money, and as I said, what's happening here is the money is getting transferred out of Mexico. Excuse me. And so there really would need to be some allegation in the complaint that there's a connection between the money laundering and the activities in Mexico that somehow makes it possible, and the complaint just says absolutely nothing about that. All it has is these general allegations, and this court's decisions about proximate cause make clear that some closer connection is needed than just some possible causal link. Indeed, in the Rothstein case, the court distinguished between the causal link necessary for Article III and the causal link necessary for proximate cause, and said that the latter is a closer link. In the Lindy case, Lindy v. Arab Bank, there seems to be a suggestion there that something beyond routine banking services might be enough. Well, Lindy didn't... Services are not enough, but something more might be enough to support a claim of primary liability. Lindy didn't address proximate cause. The court specifically declined to address that question at the end of its opinion. It addressed the second independent reason why we think the claim fails here, and which the district court found, which is that there's no plausible inference that the defendant's engaged in international terrorism. That, of course, requires two basic things. One is violent acts or acts dangerous to human life, and then also acts that appear to be intended to intimidate or coerce either a civilian population or a government. And here, what the district court concluded based on the complaint is that, and I'm quoting from the appendix at A172, to an objective observer, HSBC's conduct appeared to be motivated by economics, not by a desire to intimidate and coerce, and that's backed up by the allegations of the complaint. And in paragraph 182, the complaint describes that exit interview by the Mexico Bank's director of money laundering, and it says, quote, he blamed the failings on what he characterized as a, quote, a culture of pursuing profit and targets at all costs. And then in paragraphs 175, the complaint alleges the accounts were a cheap source of revenue. And then in paragraphs 233 and 234 to 240, there's reference to the desire of the U.S. Bank to increase its profits and cut costs. So this case is very much like another Seventh Circuit case, the Kemper case, where the court held that the allegations there against the bank that was alleged to have engaged in wrongdoing, violations of bank laws. And the Seventh Circuit said to an objective observer, the bank's interactions with the Iranian entities there were motivated by economics, not a desire to intimidate and coerce. And the Seventh Circuit there relied on very similar statements in that complaint that talked about the economic and profit motives of the bank. So we think that is the reason why the district court here correctly reached the same conclusion with respect to this complaint. Obviously, it would be very unusual for a bank to meet this definition, something that's violent, acts that are violent or dangerous to human life, and that appear to intend to coerce. Let me ask you a question, just so I can understand the statutory scheme. If the cartels were on the list, then where would we be? So that leads into the point that I was just making, Your Honor. Congress, some years after the enactment of the Anti-Terrorism Act, and after this court's decision in Rothstein holding that there's no secondary liability, Congress enacted the JASTA law, which created aiding and abetting and conspiratorial liability, but restricted it to circumstances where the terrorist act was committed by a foreign terrorist organization that had been designated at the time that the act was committed. So what Congress recognized there, it created secondary liability for a number of reasons, one of which is the difficulty of proving that established businesses meet both this proximate cause and international terrorism test, but it restricted that secondary liability cause of action to circumstances where an FTO has committed the offense. So, secondary liability not available here because of the restrictions that Congress imposed. So, this kind of activity, this money laundering, if they were on the list, there would be liability? I think if they were on the list, then there would be some questions about whether the requirements for conspiracy and aiding and abetting liability were satisfied. Aiding and abetting liability requires both substantial assistance and the proper state of mind. So there are lots of restrictions on secondary liability, but what's clear here is that for primary liability, my friend on the other side referred to the violation of the material support predicate criminal offense. So, alleging facts that constitute a violation of that offense is one element of what's required for primary liability, but what's also required are allegations that plausibly allow an inference of both proximate cause and satisfying the international terrorism standard. I see that my time has expired. Unless the court has any further questions, we'll rest on our briefs. Thank you. Mr. Elias, your rebuttal? Yes, Your Honor. Can I follow up on the question? What Congress has done now with secondary liability, isn't that some indication that what we have here is not covered? I say absolutely not. In our papers, we actually cite to the legislative history, and in passing the bill, the sponsor, Senator Cornyn, and we've got the site in our papers, said that the passing of JASTA is a further fulfillment of the purpose of the anti-terror act, which was to imperil or interrupt the flow of money to terrorist organizations. In doing so, he specifically said that enacting JASTA does not interrupt or displace the law being secondary liability under the primary provisions, and he specifically pointed to Section 2339A and 2339C. So the legislative intent in the passing of JASTA is clear that they were expanding liability, but they were keeping intact primary liability under the secondary liability under the primary liability scheme. Is there a case that permits a primary liability claim against a bank for providing banking services, including that facilitate money laundering? Yes, Your Honor, there are several. And I would say there are several district court cases, and we've cited them in our paper, include Strauss and Weiss. These are all Second Circuit district court cases, as well as credit lien aid. Involving organizations that are not listed under JASTA? Oh, I'm sorry, are you talking about organizations that are non-FTOs, non-foreign terrorist organizations? Yeah, is there a case like this one where primary liability on a bank involving an organization that's not listed? Your Honor, I believe the answer to that question is technically, there is, and I believe Boeing, at the time, there was, and I might be misstating this, but there was at least one case where at the time the organization was not an FTO. The organization later became an FTO, but they proceeded under 2339A and 2339C. But, Your Honor, I don't have a case that directly applies to something like the Mexican drug cartels. We would say that under the statutory framework, that designation is not required. Thank you both. We will reserve decision. Thank you.